(129 So. 466)

## INDEPENDENT LIFE INS. CO. OF AMERICA v. BUTLER.

### 8 Div. 177.

Supreme Court of Alabama.

May 29, 1930.

Rehearing Denied June 26, 1930.

Tennis Tidwell, of Decatur, for appellant.

Ben L. Britnell and Eyster & Eyster, all of Decatur, for appellee.

**BROWN, J.**

This is an action on a policy of life insurance issued by the defendant to William H. Curbow, on his application, naming his wife, the plaintiff, as the sole beneficiary.

The substance of the defendant's plea 3 is that the insured "made and signed a written application to the defendant for the issuance of the policy sued on," and that in said application he *warranted he was in perfect health;* that in fact he was not in perfect health, but was suffering from either high-blood pressure or heart or kidney disease; that the insured knew he was not in perfect health, but was suffering from one or more of these diseases at the time the application was made, and knew the *warranty was false;* that it was made by the insured with intent to deceive the defendant, and with the purpose of inducing the defendant to issue the policy of insurance sued on; that said *warranty* did deceive the defendant, and that the defendant relied on the warranty in the issuance of the policy; and that said *warranty* was material to the risk.

Pleas 4 and 9 were of like import, alleging a warranty made in the application for the issuance of the policy and a breach thereof.

Plea 10 was to the effect that the policy contract stipulated that "no obligation is assumed by the Company unless on the date of delivery hereof, the insured is alive and in sound health"; and averred that the insured was not in sound health on the date of the issuance and delivery of the policy, but was suffering from either high-blood pressure, heart disease, or kidney disease, *which increased the risk of loss under the policy.*

Plea 11 was to the same effect, except it did not aver that the alleged disease increased the risk of loss.

Embodied in the policy contract, among others, were the following provisions:

(1) "No obligation is assumed by the Company unless on the date and delivery hereof the insured is alive and in sound health," etc.

(2) "This policy shall be incontestable from date of issue except for non-payment of premiums, actual and intended fraud, or for engaging in military or naval service in time of war, without permission from the Company," etc.

(3) "All the conditions and agreements contained on this, the preceding and succeeding pages hereof, constitute the entire contract between the Company and the insured and the holder or claimant thereof," etc.

■ The application for the issuance of the policy was not made a part of the policy by being incorporated therein or attached thereto; and the last-quoted stipulation, 3, excludes the idea that any writing not embodied in, indorsed on, or attached to, the policy and made a part thereof, shall be considered a part thereof; and this is the clear effect of the statute, Code 1923, § 8371, as interpreted in Manhattan Life Insurance Co. v. Verneuille, 156 Ala. 592, 47 So. 72, 74. To quote from that opinion, after quoting the statute as it appeared in the Code of 1896, § 2602, "The language quoted is clear and unambiguous. It means what it says and says what it means. To hold that the insured is bound by any anterior or contemporaneous agreements, not plainly expressed in the policy, would strike down both the spirit and letter of the statute. Certainly the parties could, in the absence of the statute, make the application a part of the contract by proper reference thereto, and without setting out said agreement in the policy; *but to hold that they can do so in the very face of this statute would be to emasculate it.*" (Italics supplied.)

This statute was carried forward into the Code of 1907, without change, except the penal provisions were embraced in the Criminal Code as section 7188, and the other provisions in the Civil Code as section 4579; and thereafter, in Empire Life Insurance Co. v. Gee, 171 Ala. 435, 55 So. 166, 167, it was noted that: "In Mutual Life Ins. Co. v. Allen, 166 Ala. 159, 51 So. 877, section 4579 was accepted as meaning that all such agreements between the parties to contracts of insurance as are not plainly expressed in the policy do not bind the parties, though so much of the contract as is so expressed remains unaffected by the part not so expressed. In the more recent case of Satterfield v. Fidelity Mutual Life Ins. Co., 171 Ala. 429, 55 So. 200, it was held that the contents of papers, incorporated by reference as a part of the policy and attached thereto, were expressed in the policy, within the meaning of this section.

"These constructions—and we adhere to them—make the policy, including documents adopted by reference and attached, the sole expositor of the contract between the parties. * * * The insurer may not therefore sustain a plea that the insured has breached the contract by giving in evidence the warranties of an application for the policy, not incorporated in the body of the

policy, or not so attached as to serve the purpose of the statute."

Since this decision, the statute has been brought forward into the Code of 1923 as section 8371 without change, with the effect of adopting this interpretation as its true meaning. Barnewall v. Murrell, 108 Ala. 366, 18 So. 831.

. . In a more recent case, Sovereign Camp W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520, 523, we note this expression: "In order to constitute a warranty, the subject-matter must either be incorporated in the body of the policy, or in some other paper adopted by reference therein as a part of· the policy." It appears from an examination of the report of that case that the pleas approved all averred that the application was a part of the policy. The quoted utterance, therefore, was not necessary to a decision of the case, and is at most a loosely expressed dictum.

The expression found in the opinion of the Court of Appeals in the case of Penn Mutual Life Ins. Co. v. Cobbs, 123 So. 94, 97, that "the plaintiff insists that, in order for an application for a life insurance policy to be regarded as a part of the contract of insurance, it must be either indorsed on the policy or physically attached thereto. We think this is too narrow a construction to place upon the language of section 8371 of the Code of 1923," is not only dictum, but is not in accord with the decisions of this court. In that case the court found as a fact that the application was attached to, and made a part of, the policy.

■■ An application for the issuance of a policy of insurance, signed by the insured, containing representations as to the health of the insured, may be received as evidence of such representations in support of a plea of fraud and deceit, though the application is not embodied in, nor made a part of, the contract (Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307; Mass. Mutual Life Ins. Co. v. Crenshaw, 195 Ala. 263, 70 So. 768; Empire Life Ins. Co. v. Gee, supra); but, where the plea is of a warranty and a breach thereof, such application not embodied in, or attached to, the policy, and made a part thereof, is not evidence of such warranty. Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166; Reliance Life Ins. Co. v. Sneed, supra. For this reason, charges 8, 9; 10, 14, 14a, 16, 30, 31, 32, and 33 were refused without error.

■ The defendant's pleas 10 and 11 are rested upon the warranty of "sound health" embodied in the policy contract. Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307.

Appellee's contention that the defense asserted in these pleas is unavailing to the defendant because of the incontestable clause is without merit, in the absence of a replication pleading the incontestable clause as an answer to the pleas.

■ The diseases pleaded in these pleas as a breach of the alleged warranty not being as a matter of common knowledge, such as would increase the risk, to sustain the plea the defendant had the burden of showing that the insured was afflicted with the alleged diseases; that they were serious, and such as affected the general soundness of his health. National Life & Accident Ins. Co. v. Bridgeforth (Ala. Sup.) 124 So. 886;[1] Padgett v. Sovereign Camp, W. O. W., 218 Ala. 255, 118 So. 456; Massachusetts Mut. Life Ins. Co. v. Crenshaw, supra; Providence Savings Life Assurance Society v. Pruett, 141 Ala. 688, 37 So. 700: Mutual Life Ins. Co. of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649.

■ The term "disease" means more than a temporary disorder; it denotes a serious illness, which has impaired the constitution or left in its wake some organic or chronic effect undermining the general health. Joyce on Insurance, § 1848; Logan v. Providence Savings Life Assurance Society, 57 W. Va. 384, 50 S. E. 529; Peterson v. Modern Brotherhood of America, 125 Iowa, 562, 101 N. W. 289, 67 L. R. A. 631; Cushman v. United States Life Insurance Co., 70 N. Y. 72; note 37 C. J. 460, treating "Scope and meaning of the word 'disease.'"

"High blood pressure," like vertigo, is more of a symptom than a disease. Mutual Benefit Life Ins. Co. v. Daviess' Ex'r, 87 Ky. 541, 9 S. W. 812. And it has been held that an anemic murmur of the heart "indicating no structural defects," but arising from temporary debility or weakness, is not a bodily infirmity. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620.

■ And, likewise, that one who has "kidney trouble" from temporary ailments or causes is not necessarily affected with a "kidney disease." Hogan v. Metropolitan Life Ins. Co., 164 Mass. 448, 41 N. E. 663; Continental Life Ins. Co. v. Yung, 113 Ind. 159, 15 N. E. 220, 3 Am. St. Rep. 630.

The evidence made the case one for the jury as to whether the insured's ailments were serious diseases affecting his general health, and charges 27, 28, and 29 were refused without error.

■ The hypothetical question, made the basis for assignment of error 11, was put to the defendant's witness Dr. Walker on cross-examination, and, · while the hypothetical facts were not then in evidence, the testimony subsequently introduced by the plaintiff in rebuttal clearly tended to sustain the hypothetical case, and, if it be conceded that

---

[1] 220 Ala. 314.

it was error to overrule the objection to the question, it was clearly error without injury.

■ The evidence is without dispute that the policy of insurance was issued on October 24, 1927, and appellant insists, if we understand its contention, that the doctor's certificate attached to, and made a part of, the proof of death is conclusive against the plaintiff that the insured was afflicted with the disease of which he died on June 4, 1928, at the time the policy was issued. Conceding that this certificate is evidence under the holding in Cotton States Life Ins. Co. v. Crozier, 216 Ala. 537, 113 So. 615, the most it shows is that the primary cause of death was "myocarditis," and the contributing or secondary cause was "hypatrafus of heart with nephritis"; that, when the certifying doctor attended the insured "four or five times in the spring of 1927," he had influenza, and at this time was "not afflicted with any *infirmity*, deformity, or *chronic disease*." (Italics supplied.)

There is nothing in this certificate to indicate when the disease of which the insured died first developed, and the statements therein are clear to the conclusion that he was not so afflicted in the spring of 1927. National Life & Accident Ins. Co. v. Puckett, 217 Ala. 110, 115 So. 12; Independent Life Ins. Co. v. McCurry, 22 Ala. App. 602, 118 So. 495.

The appellant's contention that the court erred in overruling its motion for new trial is rested largely upon the testimony of Dr. Walker given in his examination in chief, going to show that, when he was called to treat the insured in the spring of 1927, he was then afflicted with myocarditis—an inflammation of the fleshy or muscular substance of the heart, had albumen in his blood, a symptom of Bright's disease, nephritis—and that at that time his heart was hypertrophied, excessively developed.

But this testimony is contradicted, not only by the certificate of Dr. Walker, attached to and made a part of the proof of death, but by his cross-examination, and the rebuttal testimony as to the physical condition of the insured after Dr. Walker's treatment, and insured's activities in the prosecution of his business.

We are not able to affirm that the verdict of the jury is contrary to the great weight of the evidence, and therefore that the court erred in overruling the motion for new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The record is free from reversible error.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

**On Rehearing.**

BROWN, J.

■ Assuming the correctness of appellant's contention that pleas 3, 4, and 9 are pleas of fraud, and not pleas of breach of warranty, the issues presented by these pleas were fully given to the jury in the oral charge of the court, and in given charges 11, 12, 13, 17, 18, 19, 20, and 21, and reversible error was not committed in refusing charges 8 to 33, referred to in the foregoing opinion.

It results that the application for rehearing is therefore overruled.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.